ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| YAMIL HIRAM GONZÁLEZ CABASSA, SU ESPOSA PROCEDENTE DEL CANDICE LING-LI CHOO Y TRIBUNAL DE LA SOCIEDAD LEGAL DE PRIMERA INSTANCIA, GANANCIALES COMPUESTA POR AMBOS<br><br>APELADOS<br><br>V.<br><br>ROSA DE LOS ÁNGELES CORTÉS RIVERA, SU ESPOSO FRANCISCO FERNÁNDEZ GARCÍA REVILLO Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS; FULANO DE TAL Y SUTANO DE TAL<br><br>APELANTES | TA2025AP00305 | *APELACIÓN* procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Caso Núm. SJ2024CV02342<br><br>Sobre:<br><br>Reivindicación, Sentencia Declaratoria, Daños y Perjuicios |

Panel Especial integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz, y la juez Marrero Guerrero[1]

**Brignoni Mártir, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 29 de octubre de 2025.

Comparece ante nos, Rosa De Los Ángeles Cortés Rivera ("señora Cortes Rivera") y su esposo Francisco Fernández García Revillo ("señor García Revillo"), (en adelante, en conjunto "los apelantes").[2] Solicitan nuestra intervención para que dejemos sin efecto la *"Sentencia Parcial"* emitida y notificada el 31 de julio de 2025, y la *"Orden"* emitida y notificada el 26 de agosto de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante la primera determinación, el foro primario declaró *Ha Lugar* la *"Solicitud de Sentencia Sumaria,"*

---

[1] Véase Orden Administrativa OATA-2025-173.

[2] Se hace constar que surge del expediente ante nuestra consideración, que los apelantes están casados bajo régimen de separación de bienes. Véase las *"Capitulaciones Matrimoniales"* presentadas por estos. Entrada Núm. 38 de SUMAC del TPI, anejo (1a) – (3).

presentada por Yamil Hiram González Cabassa; su esposa, Candice Ling-Li Choo; y la Sociedad Legal de Bienes Gananciales compuesta por ambos, (en lo sucesivo, "los apelados"). En consecuencia, reconoció la titularidad de los apelados sobre el estacionamiento Núm. 9 y ordenó a los apelantes que desalojaran dicho estacionamiento. En cuanto a la segunda determinación, por medio de esta, el referido foro declaró aprobado el "*Memorandum de Costas,*" presentado por los apelados.

Por los fundamentos que expondremos a continuación, *confirmamos* la determinación recurrida.

**I.**

El 11 de marzo de 2024 los apelados presentaron la *"Demanda"* de epígrafe. Esgrimieron, que el 14 de noviembre de 2023 adquirieron mediante escritura el apartamento (A-11) del Condominio Washington #26 (en adelante, "el Condominio"). Añadieron, que surge de la escritura de compraventa y del Plano de los estacionamientos del Condominio, que a ellos les corresponde el estacionamiento identificado con el Núm. 9. De otra parte, sostuvieron que la señora Cortés Rivera es dueña del apartamento (B-11), en donde reside junto su esposo, el señor García Revillo. Alegaron, que se desprende de la escritura matriz, la escritura individual de la finca y los planos del Condominio, que al referido apartamento (B-11) le corresponde el estacionamiento Núm. 8.

Pese a ello, sostuvieron que desde que adquirieron el apartamento (A-11) en su estacionamiento Núm. 9 permanecen ubicados dos (2) vehículos, uno al frente del otro, los cuales pertenecen a los apelantes. Argumentaron, que el 8 de diciembre de 2023 hicieron gestiones con el Administrador del Condominio a los fines de que éstos movieran los referidos vehículos. Además, arguyeron que realizaron gestiones adicionales con la Policía de Puerto Rico y requerimientos directos a la señora Cortés Rivera, mismos que resultaron infructuosos.

Al amparo de lo expuesto, instaron las tres (3) siguientes causas de acción: reivindicación; sentencia declaratoria; y daños y perjuicios.

Mediante estas, solicitaron que se reconociera el derecho propietario que tienen sobre el estacionamiento Núm. 9; que los apelantes remuevan sus vehículos de dicho estacionamiento; y se les indemnice por la utilización ilegítima del estacionamiento en disputa. También, peticionaron la imposición de honorarios de abogado por temeridad.

Posteriormente, el 5 de agosto de 2024, los apelados presentaron *"Solicitud de Sentencia Sumaria."* [3] En síntesis, aseveraron que el presente caso no tiene hechos esenciales en controversia por lo que el tribunal debe disponer sumariamente del asunto a su favor. Sobre los hechos incontrovertidos, argumentaron que no existe disputa sobre que son dueños del apartamento (A-11) y que mediante escritura de compraventa también se les transfirió el dominio del estacionamiento Núm. 9. De igual modo, indicaron que no existe controversia sobre que la señora Cortés Rivera es dueña del apartamento (B-11) y que según la escritura de compraventa de dicho apartamento y los planos de estacionamiento del Condominio, a la referida señora le corresponde el estacionamiento Núm. 8. Además, alegaron que es un hecho incontrovertido que los apelantes conocen y reconocen desde el año 2012 que el estacionamiento que le pertenece a la señora Cortés Rivera es el Núm. 8. Añadieron, que tampoco está en controversia que la señora Cortés Rivera permanece utilizando ilegítimamente el estacionamiento Núm. 9.

Así pues, el 14 de octubre de 2024, los apelantes presentaron *"Contestación a Demanda."* En esta alegación responsiva, aceptaron que el señor González Cabassa es titular del apartamento (A-11). No

---

[3] Acompañaron su petición con la siguiente prueba documental: Escritura Núm. 49 otorgada el 14 de noviembre de 2023; Escritura Núm. 14 del 22 de diciembre de 2015 sobre "Escritura para Enmendar Escritura Matriz;" Plano del área de estacionamiento del Condominio; "Petición de Interdicto Posesorio;" Certificación Registral de la Finca Núm. 26100, perteneciente a la señora Cortés Rivera; "Declaración Jurada" suscrita por el señor González Cabassa; Fotografía de dos (2) vehículos estacionados; *"Minuta Asamblea Ordinaria"* del 5 de diciembre de 2012; Copias de correos electrónicos dirigidos a la señora Cortés Rivera; Captura de pantalla de mensaje de texto dirigido a la señora Cortés Rivera; Querellas ante la Policía de Puerto Rico; Comunicaciones electrónicas enviadas por el señora González Cabassa al Administrador y la Junta de Directores del Condominio; Carta Certificada remitida a la señora Cortés Rivera; "Orden de Citación" dirigida a la señora Cortés Rivera; "Declaración Jurada," suscrita por el señor Manuel Náter Vázquez.

obstante, argumentaron que el estacionamiento Núm. 9 le pertenece a la señora Cortés Rivera, la cual aducidamente lleva treinta (32) años utilizando el mismo. Además, aseveraron, que no surge de la Escritura Matriz ni del Plano del Condominio la asignación de estacionamiento alguno. Por otra parte, admitieron que en el año 2012 advinieron en conocimiento, a través de su escritura de compraventa, que a su apartamento le corresponde el estacionamiento Núm. 8. Sin embargo, entienden que ello se debe a un error que no altera el dominio que ostenta la señora Cortés Rivera sobre el estacionamiento Núm. 9. Cónsono con lo anterior, arguyeron que el antiguo dueño del apartamento (A-11) y la señora Cortés Rivera mutuamente recocieron sus respectivos dominios sobre ambos estacionamientos: él reconocía que ella era dueña del estacionamiento Núm. 9 (antes marcado 11B) y ella reconocía que él era dueño del estacionamiento Núm. 8 (antes marcado 11A), sin necesidad de acuerdo adicional.

En el mismo escrito, los apelantes instaron una *"Reconvención."* Sostuvieron que la señora Cortés Rivera compró el apartamento (B-11) en el año 1991. Agregaron, que desde dicha fecha hasta aproximadamente el año 2014, los estacionamientos estaban marcados con números y letras de forma similar a la marcación de los apartamentos. A razón de ello, según argumentaron, el estacionamiento de la señora Cortés Rivera tenía la misma designación alfanumérica de su apartamento (B-11). Añadieron, que la vendedora del apartamento (B-11) le indicó a la señora Cortés Rivera que su estacionamiento era el designado con el (11B). Adujeron, que la referida señora Cortés Rivera había utilizado dicho estacionamiento por treinta y dos (32) años, de manera ininterrumpida, pública, pacífica y en concepto de dueña. Por otro lado, aseveraron que el señor González Cabassa carece del requisito de buena fe para considerarse tercero registral. En virtud de lo expuesto, solicitaron que se declarara la prescripción adquisitiva del

estacionamiento Núm. 9; peticionaron una indemnización en daños y perjuicios; y el pago de honorarios de abogado a su favor.

Por su parte, el 6 de noviembre de 2024, los apelados presentaron *"Contestación a Reconvención."* Mediante esta, aceptaron los siguientes hechos: a) que la señora Cortés Rivera compró el apartamento (B-11) en el año 1991; que el señor González Cabassa fue miembro de la Junta de Directores del Condominio en el año 2023; y que el primer apartamento que compró el señor González Cabassa en el Condominio fue el clasificado como (A-10) en el año 2021. No obstante, negaron las alegaciones proferidas por los apelantes con relación a la titularidad del estacionamiento Núm. 9.

Así las cosas, el 9 de diciembre de 2024, los apelantes presentaron *"Solicitud de Sentencia Sumaria Parcial de Doña Rosa y Contestación a Moción de Sentencia Sumaria de Yamil."*[4] En esencia, esgrimieron que los hechos materiales del caso están incontrovertidos, por lo cual procede que se declare sentencia sumaria parcial a su favor y consecuentemente se determine que la señora Cortés Rivera adquirió por prescripción adquisitiva el estacionamiento Núm. 9. En lo atinente, esbozaron, entre otros, los siguientes hechos esenciales que a su juicio no están en controversia:

> a) que la señora Cortés Rivera había utilizado el estacionamiento Núm. 9 por treinta y dos (32) años de manera ininterrumpida, pública, pacífica y en concepto de dueña; b) que la Escritura Matriz del Condominio no identifica los estacionamientos asignados a los apartamentos, sino que delegó dicha función a la escritura de cada apartamento; c) que la señora Cortés Rivera advino en conocimiento en el año 2012 de un alegado error en su escritura de compraventa, de la que se desprende que a su apartamento le corresponde el estacionamiento Núm. 8 en lugar del estacionamiento Núm. 9; d) que el señor González Cabassa no cumple con el requisito de buena fe de la tercería registral; e) que el señor González Cabassa presentó en el Registro de la Propiedad la escritura de compraventa del apartamento (A-11) el día 2 de enero de 2024; y f) que el referido señor se allanó a la petición de interdicto posesorio que los apelantes presentaron en el caso SJ2024CV01977.

---

[4] Acompañaron su solicitud con la siguiente prueba documental; *"Declaración Jurada,"* suscrita por Rosa de Los Ángeles Cortés Rivera; fotos de la designación alfanumérica de los estacionamientos en cuestión; Información de documento presentado al Registro de la Propiedad; Información registral de la finca 10313; Fotografías de documento intitulado: "Proyecto: Washington 26. Apartments – Condado – Santurce;" Fotografías de documentación de planos; Escritura Núm. 26 del 8 de mayo de 1973; Escritura Núm. 43 del 18 de octubre de 2004 sobre Capitulaciones Matrimoniales; Copia del caso *Bravman González v. Consejo Titulares*, 183 DPR 827 (2011).

Tras los apelados oponerse a la solicitud de sentencia sumaria y los apelantes replicar, el 31 de julio de 2025, el foro primario notificó la *"Sentencia Parcial"* que hoy se nos solicita revisar. Mediante esta, declaró *Ha Lugar* la *"Solicitud de Sentencia Sumaria,"* presentada por los apelados. En consecuencia, reconoció la titularidad de los apelados sobre el estacionamiento Núm. 9 y ordenó a los apelantes que desalojaran dicho estacionamiento. Ante el foro primario quedó por dilucidar la controversia sobre los alegados daños y perjuicios reclamados por los apelados.

Como parte de la *"Sentencia Parcial,"* el referido tribunal esbozó las siguientes determinaciones de hechos:

1. El 14 de noviembre de 2023, los demandantes compraron el Apartamento Número A-11, localizado en el Condominio Washington 26, San Juan, Puerto Rico, mediante escritura número cuarenta y nueve (49) de compraventa ("PURCHASE AND SALE"), otorgada el 14 de noviembre de 2023, ante la Notario Iliada Sofia Marín Colon.

2. En la escritura de compraventa antes identificada mediante la cual los demandantes compraron el apartamento A-11 en el Condominio Washington 26 establece que: "Le corresponde el área de estacionamiento número nueve (9)."

3. La Escritura Matriz establece que la designación de estacionamientos se haría en la primera compraventa al disponer lo siguiente:

TENTH: The Limited common elements, the use of which shall be reserved for the benefit of specific apartments, shall be as follows: (A) Parking Spaces – In the first or ground floor, twenty four-parking spaces, one for the exclusive use of each apartment, series A an B, and two for each penthouse apartment, as shall be permanently designated and assigned in the deed of sale of each apartment.

4. En la Escritura número catorce (14) para Enmendar Escritura Matriz del Condominio Washington 26, se establece que "[c]ada titular utilizará el espacio asignado en su escritura de Individualización y Segregación donde a la fecha de hoy conste en el Registro de la Propiedad, ello efectivo al primero de enero de dos mil quince (2015)."

5. El Condominio Washington 26 enumera 12 pisos, sin embargo, consiste en 11 pisos con dos apartamentos por piso.

6. La codemandada Rosa De Los Ángeles Cortés Rivera es la titular y propietaria del apartamento B-11, también conocido y enumerado por el condominio como el apartamento 11-B, del Condominio Washington 26.

7. La Sra. Cortés Rivera compró su apartamento 11B en el Condominio Washington 26 el 15 de noviembre de 1991.

8. El codemandado Francisco Fernández reside con su esposa la Sra. Cortes en el apartamento B-11, también conocido y enumerado por el condominio como el apartamento 11B en los planos del Condominio Washington 26.

9. Del Registro de la Propiedad surge que el estacionamiento del apartamento 11-B es el número ocho (8).

10. Desde que los demandantes compraron su apartamento 11-A, en el estacionamiento número 9 designado, se encontraba y aún se encuentra estacionado un vehículo marca BMW; al igual que un vehículo Mercedes Benz justo frente al BMW el cual es área de "no parking" según los planos del condominio.

11. Los titulares de ambos vehículos BMW y Mercedes Benz, son los codemandados Rosa de los Ángeles Cortés Rivera y Francisco Fernández García Revillo, quienes están casados bajo el régimen de separación de bienes.

12. En la reunión Anual del Consejo de Titulares del Condominio Washington 26, celebrada el 5 de diciembre de 2012, se aclaró lo siguiente:

Se aclara que los titulares de los apartamentos 11A, L. Mahtani y 11B, Rosa Cortes están utilizando sus estacionamientos de forma invertida ya que según el registro de la Propiedad al 11A le corresponde el espacio #9 mientras que al 11B le corresponde el espacio #8. Se le sugiere que se ponga de acuerdo con su vecino si desea modificar esto en escritura y tener los espacios asignados según los están utilizando ya que su estacionamiento es el #8. La doctora Cortés explica que cuando compró el apartamento a ella se le dijo que el suyo era el #9 aunque en la escritura establece que es el #8. La Lcda. Frías explicó nuevamente que los acuerdos verbales no prevalecen frente a un registro. Los condominios son sistemas catastrales y se basan en lo que está registrado.

13. En la referida Reunión Anual del Consejo de Titulares del Condominio Washington 26, la Sra. Rosa De Los Ángeles Cortés Rivera reconoció que su escritura establece su estacionamiento es el #8.

14. En dicha reunión, celebrada el 5 de diciembre de 2012, la Sra. Rosa de los Ángeles Cortés fue sugerida a ponerse de acuerdo con su vecino, el Sr Mahtani, quien era titular del apartamento 11A, para "modificar esto en escritura y tener los espacios asignados según los están utilizando ya que su estacionamiento es el #8". Además, la Lcda. Frías explicó que "los acuerdos verbales no prevalecen frente a un registro".

15. El 8 de diciembre de 2023, el Administrador del Condominio les solicitó a los demandados que movieran sus vehículos del estacionamiento de los demandantes.

16. El 29 de diciembre de 2023, el Administrador del Condominio nuevamente les solicitó a los demandados que movieran sus vehículos del estacionamiento de los demandantes.

17. El 1 de enero de 2024, el Sr. González, mediante un mensaje a través del chat de WhatsApp de los residentes del Condominio, les solicitó a los demandados que movieran sus vehículos del estacionamiento de los demandantes y que de no proceder habría de solicitar la intervención de la Policía de Puerto Rico.

18. El 2 de enero de 2024, los demandantes llamaron a la Policía de Puerto Rico, y presentaron una querella en contra de los demandados por invadirle su propiedad, es decir, el estacionamiento que corresponde a su apartamento.

19. La policía procedió a extenderle boletos a ambos vehículos.

20. El 2 de enero de 2024 en la noche, el codemandante Yamil Hiram González Cabassa, se encontró con la codemandada, Sra. Rosa De Los Ángeles Cortés Rivera, en el lobby del Condominio Washington #26. En ese momento, y de forma amable, le pidió a la codemandada que moviera los vehículos de motor evitando así que el asunto tuviera que escalar a nivel judicial toda vez que la escritura matriz del condominio y la de los apartamentos, así como los planos reflejan claramente la titularidad de los estacionamientos. La codemandada le contestó que no iba a mover dichos vehículos.

21. El 3 de enero de 2024, el demandante le notificó al Administrador y a la Junta de Directores un recuento de lo acontecido el día anterior con la codemandada.

22. El 15 de enero de 2024, el Presidente de la Junta de Directores del Condominio y el Administrador, le remitieron una comunicación por correo certificado a la Sra. Rosa De Los Ángeles Cortés Rivera. En la misma, le reiteraron que el estacionamiento número 9 les pertenece a los demandantes como titulares del apartamento 11A (A-11) y que, por tanto, a ella no le corresponde; pero que aun así había continuado utilizando. También, le pidieron que si tenía alguna evidencia de que ese era su estacionamiento, que la presentara.

23. El 26 de enero de 2024, los demandantes llamaron a la Policía para radicar otra querella por el hecho de que los demandados continuaban invadiendo su estacionamiento.

24. En octubre de 2023, apenas un mes antes de que Yamil comprara el apartamento 11A, se celebró una reunión de la Junta de Directores del Condominio. En esa reunión, estuvieron presentes Doña Rosa, Yamil, Manuel Nater y otros miembros.

25. En ese momento, Doña Rosa era Vicepresidenta y Yamil González era vocal en la Junta de Directores del Condominio.

26. Yamil González compró el apartamento 11A al Sr. Mahtani el 14 de noviembre de 2023 y reclamó el uso del estacionamiento número 9.

27. Yamil González presentó la escritura de compraventa en el Registro de la Propiedad el 2 de enero de 2024.

28. La Sra. Cortés, el 24 de febrero de 2024 presentó una petición de interdicto posesorio ante el Tribunal de Primera Instancia, Sala Superior de San Juan en el caso civil número SJ2024CV01977.

29. El Tribunal de Primera Instancia dictó Sentencia reconociendo que Yamil González se comprometía a no intervenir con la Sra. Cortés, ni a interferir en cuanto al uso y posesión del estacionamiento mientras se adjudica la titularidad del espacio de estacionamiento en controversia ante este foro.

El 11 de agosto de 2025, los apelados presentaron *"Memorandum de Costas"* de conformidad a la Regla 44. 1 de Procedimiento Civil, 32 LPRA Ap. V, R, 44.1. En atención de ello, el 26 de agosto de 2025, el foro primario notificó la segunda determinación que hoy nos ocupa. Mediante esta, declaró aprobado el "*Memorandum de Costas.*"

Oportunamente, el 2 de septiembre de 2025, los apelantes presentaron ante este Tribunal un escrito de apelación. Mediante este, esbozaron los siguientes señalamientos de error:

Erró el Tribunal de Primera Instancia al Estimar que los Actos de Yamil Posteriores a Consumar la Usucapión y el Doña Rosa Haber Advenido en Conocimiento de la Inexactitud del Registro, Interrumpieron la Usucapión.

Erró el Tribunal al No Declarar que Yamil Incumple el Requisito de Buena Fe Por lo Que Está Impedido de Reclamar la Protección del Registro

El 11 de septiembre de 2025, esta Curia emitió una *"Resolución"* mediante la cual se les concedió a los apelados el término reglamentario de treinta (30) días para presentar su alegato en oposición. Al siguiente día, los apelados cumplieron con la anterior *"Resolución,"* presentando así su alegato en oposición.

Con el beneficio de la comparecencia de ambas partes, procedemos a esbozar el marco jurídico aplicable a la cuestión en litigio.

## II.

**A**.     **Sentencia Sumaria**:

La sentencia sumaria es un mecanismo procesal cuya función es permitir a los tribunales disponer parcial o totalmente de litigios civiles en aquellas situaciones en las que no exista alguna controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico*, Inc., 2025 TSPR 1; *Oriental Bank v. Caballero García,* 212 DPR 671, 679 (2023); *León Torres v. Rivera Lebrón*, 204 DPR 20, 41 (2020); *Rodríguez Méndez, et als v. Laser Eye*, 195 DPR 769, 784 (2016).

Así pues, se dictará sentencia sumaria cuando las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hay u otra evidencia que obre en el expediente del tribunal, demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente. 32 LPRA Ap. V, R. 36.3 (e); *Consejo de Titulares del Condominio Millennium v. Rocca Development Corp.,* 2025 TSPR 6; *González Meléndez v. Municipio*

*Autónomo de San Juan,* 212 DPR 601, 611-612 (2023). Así, el criterio rector al considerar la procedencia de un dictamen sumario es que no haya controversia sobre los hechos esenciales pertinentes, según alegados por las partes en sus respectivas solicitudes u oposiciones, y que solo reste aplicar el Derecho. *Rodríguez García v. UCA,* 200 DPR 929, 941 (2018). Esta determinación debe ser guiada por el principio de liberalidad a favor de la parte que se opone a que se dicte sentencia sumaria, para evitar la privación del derecho de todo litigante a su día en corte. *Ramos Pérez v. Univisión*, 178 DPR 200, 216-217 (2010).

Al examinar la procedencia de una solicitud de sentencia sumaria, los tribunales deben guiarse por las disposiciones de la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1-36.7. Al efectuar el referido examen, el Tribunal de Apelaciones, deberá realizar una revisión *de novo* y examinar el expediente de la manera más favorable a la parte que se opuso a la moción de sentencia sumaria en el foro primario, haciendo todas las inferencias permisibles a su favor. *Acevedo Arocho v. Departamento de Hacienda de Puerto Rico,* 212 DPR 335, 353 (2023)*; Meléndez González et al v. M Cuebas*, 193 DPR 100, 118 (2015).

Nuestra evaluación está limitada a la consideración de la evidencia que las partes presentaron ante el foro de primera instancia. Debemos revisar que los escritos cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra.* Además, verificamos si en realidad existen hechos materiales en controversia. Finalmente, de encontrar que los hechos materiales realmente están incontrovertidos, revisamos si la primera instancia judicial aplicó correctamente el derecho a la controversia. *Meléndez González et al. v. M. Cuebas, supra*, págs. 118-119.

Si de los documentos surge duda sobre la existencia de una controversia de hechos, éstas se deben resolver contra el promovente, ya que este mecanismo procesal no permite que el Tribunal dirima cuestiones de credibilidad. *Rosado Reyes v. Global Healthcare*, 205 DPR

796, 809 (2020). De igual modo, como regla general, no es aconsejable disponer de los casos por la vía sumaria cuando exista controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia. *Jiménez Soto v. Carolina Catering Corp.*, 2025 TSPR 3. Este foro intermedio tampoco puede adjudicar los hechos materiales y esenciales en disputa, ya que esa tarea le corresponde al foro de primera instancia. *Vera v. Dr. Bravo*, 161 DPR 307, 335 (2004).

**B.     Ley de Propiedad Horizontal:**

Desde la aprobación de la Ley Núm. 104 de 25 de junio de 1958, según enmendada, 31 LPRA sec. 1291 et seq., nuestra jurisdicción promueve la adquisición de propiedad individual dentro de la configuración de un régimen de horizontalidad que favorece la convivencia colectiva. Tras múltiples enmiendas, la precita legislación fue derogada por la Ley de Condominios de Puerto Rico, Ley Núm. 129-2020, según enmendada, 31 LPRA sec. 1921 et seq ("Ley Núm. 129-2020"). De conformidad a la cláusula de vigencia de ésta última, sus disposiciones son de aplicabilidad a "todo inmueble sometido al régimen de Propiedad Horizontal, irrespectivo de la fecha en que fuera sometido a dicho régimen." Véase, el Artículo 76 de la Ley Núm. 129-2020, *supra*.

La Ley Núm. 129-2020, *supra* se aprobó a los fines principales de constituir un régimen jurídico que facilite la vida en comunidad y propicie la disponibilidad de residencias en un área escasa de terreno. *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros*, 2025 TSPR 56. Cónsono con lo anterior, el referido régimen es de perfiles propios en el que convergen y se establecen el dominio exclusivo de un apartamiento y el condominio forzoso e inseparable de los elementos comunes. Véase, *Bravman, Gónzalez v. Consejo Titulares,* 183 DPR 827, 844 (2011). "Cada titular reconoce que el ejercicio del dominio en el Régimen de Propiedad Horizontal está limitado por los derechos de los demás titulares y que el derecho de

propiedad sobre su apartamento tiene que ejercerse dentro del marco de la sana convivencia y el respeto al derecho ajeno." 31 LPRA sec. 1921a.

En aras de facilitar la interpretación de este régimen jurídico en nuestro sistema legal existen unas fuentes de derecho las cuales propician la solución de las controversias que se puedan suscitar. Los edificios sometidos al régimen de propiedad horizontal tienen el siguiente orden jerárquico de fuentes de derecho: la Ley de Condominios; la escritura matriz y sus anejos; y el reglamento del condominio. *Con. Tit. Centro Int´l Torre II v. PRCI,* 210 DPR 403, 413 (2022). "La jerarquía es particularmente importante cuando se intenta resolver una controversia que puede tener distintas soluciones dependiendo de la norma legal que aplique." *Id.* Sobre el referido orden jerárquico se ha enfatizado que la Ley de Condominios tiene primacía, por lo que prevalece ante disposiciones contrarias a sus preceptos. *Id,* pág. 413-414.

La Escritura matriz del Condominio ocupa la segunda posición en este orden jerárquico de interpretación jurídica. La Ley Núm. 129-2020, *supra* define a la Escritura Matriz como la "Escritura Pública mediante la cual el titular único, o titulares todos, si hubiere más de uno (1), declaren expresamente, de forma clara y precisa, su voluntad de someter un inmueble al régimen de propiedad horizontal." 31 LPRA sec. 1921b. La referida escritura crea un estado de derecho que ha de ser aceptado por los sucesivos titulares al momento en que éstos adquieran apartamentos del régimen horizontal. *Bravman, Gónzalez v. Consejo Titulares,* supra, pág. 845. Ésta funge como una especie de acuerdo privado que gobierna a los condóminos o titulares siempre y cuando no esté en contravención a la ley, moral o el orden público. *Id.* A través de la escritura matriz un titular conoce la totalidad del edificio y su apartamento para hacer valer sus derechos. *Id, pág.* 846-847. La Ley Núm. 129-2020, *supra* requiere que la escritura matriz sea inscrita en el Registro de la Propiedad y describa cada apartamento con sus "medidas, situación, piezas de que conste,

puerta principal de entrada y lugar con el cual inmediatamente comunique y demás datos necesarios para su identificación." *Id, pág.* 845-846.

De igual modo, la precitada legislación exige que en la escritura matriz se precisen los elementos comunes y se especifique su uso y destino. Véase, *Consejo Titulares v. Ramos Vázquez,* 186 DPR 311, 334 (2012). La Ley Núm. 129-2020, *supra* define a los elementos comunes como aquellos que no son susceptibles de propiedad individual por los titulares y están sujetos a un régimen de indivisión forzosa. 31 LPRA sec. 1921b. Los elementos comunes se dividen en dos (2) categorías: los elementos comunes generales necesarios y los elementos comunes generales o elementos comunes voluntarios. Véase, 31 LPRA sec. 1921p; y *Bravman, González v. Consejo Titulares,* supra, pág. 848. La anterior clasificación se fundamenta en que no todas las áreas de uso común tienen el mismo valor o importancia. *Id.* Los elementos comunes necesarios son indispensables para el disfrute privado de los apartamentos mientras que los elementos comunes voluntarios quedan a merced de la disposición de los integrantes del régimen de propiedad horizontal. *Id,* pág. 848-849. Siendo así, los elementos comunes voluntarios podrían transformase en un elemento privado con el consentimiento unánime de los titulares. Véase, 31 LPRA sec. 1921c; y *Bravman, González v. Consejo Titulares,* supra, pág. 849.

Forman parte de los elementos comunes generales necesarios, entre otros, los siguientes: el vuelo, los ascensores y las áreas verdes. 31 LPRA sec. 1921p. Por su parte, entre los elementos comunes generales o no necesarios se encuentran, *inter alia,* las áreas recreativas, los sótanos, el terreno y las áreas destinadas a estacionamiento. *Id.* En la clasificación de elementos comunes también podemos encontrar a los denominados elementos comunes limitados. La Ley Núm. 129-2020, *supra* define a éstos como aquellos elementos que se destinan "al servicio de más de un titular con exclusión de los demás, tales como pasillos, escaleras y ascensores especiales, servicios sanitarios comunes a los apartamentos

de un mismo piso y otros análogos." 31 LPRA sec. 1921b; y 31 LPRA sec. 1921t. Al igual que los elementos comunes generales, los elementos comunes limitados se mantendrán en indivisión forzosa y no podrán ser objeto de acción divisoria, so pena de nulidad. 31 LPRA sec. 1922o.

En el caso particular de los estacionamientos, la Ley Núm. 129-2020, *supra* permite que éstos se puedan destinar a la utilización común, ya sea general o limitada, o bien como un área privada cuya titularidad pertenezca a los dueños de los apartamentos o como anejo de un apartamento. Véase, 31 LPRA sec. 1921p. En el escenario de uso y destino de los estacionamientos como elementos comunes, el Artículo 41 de la Ley Núm. 129-2020, establece lo siguiente con relación a este tipo de designación:

> Cuando el estacionamiento fuere elemento común, todo titular tendrá derecho a hacer uso de un espacio de estacionamiento con capacidad para acomodar un automóvil por cada apartamento de que fuere propietario que estuviere ocupado. Ningún titular podrá hacer uso de un espacio de estacionamiento que exceda aquella cabida, si con ello priva a otro titular del disfrute efectivo de tal elemento común. Si el número de espacios de estacionamiento con capacidad para acomodar un automóvil fuere menor que el número de apartamentos y hubiese más titulares interesados en ocuparlos que los espacios disponibles, éstos se sortearán entre los titulares interesados para su uso durante el período de tiempo que disponga el Consejo de Titulares, de forma tal que se garantice el acceso de dichos espacios a todos los interesados. 31 LPRA sec. 1922m.

De otra parte, es preciso señalar que, La Ley Núm. 129-2020, supra responde a un sistema catastral, en que las constancias del Registro de la Propiedad "constituyen la fuente inexpugnable sobre la configuración física del apartamento." *Parras Silvestry v. Registradora*, 203 DPR 832, 842 (2020). Entiéndase por ello, que el sistema catastral abarca la constitución del régimen horizontal y la designación de las áreas del edificio y las características de los elementos comunes. *Bravman, González v. Consejo Titulares,* supra, pág. 857.

**C. Jurisprudencia atinente a la Ley de Condominios y los Estacionamientos:**

Nuestro mas Alto Foro ha tenido la oportunidad de dilucidar diversas controversias sobre la naturaleza y posesión de los estacionamientos localizados en condominios. A continuación, se

resumirán algunas de las controversias resueltas por el aludido Foro. En el caso *Brown III v. J.D. Cond. Playa Grande*, 154 DPR 225 (2001), la escritura del Condominio Playa Grande establecía un área de doce (12) estacionamientos de visitantes que se designaban como áreas o facilidades comunales del proyecto. Así las cosas, en una Asamblea Extraordinaria se acordó, por voto mayoritario, que se estarían sorteando cada seis (6) meses dichos estacionamientos, ya fuera para uso exclusivo de los titulares o para uso de los visitantes de éstos. Luego de la ocurrencia de varios incidentes procesales, el caso llegó hasta el Tribunal Supremo a tenor de la siguiente controversia: "si el esquema de sorteo de estacionamientos aquí impugnado es un acto de administración del Consejo de Titulares o si, por el contrario, es un acto que transforma el uso y destino de un elemento común general a uno limitado."

Al examinar la naturaleza de los estacionamientos en el régimen de propiedad horizontal, el Tribunal Supremo profirió, entre otras, las siguientes expresiones:

a.  Resaltó la siguiente cita del profesor Michel J. Godreau:

[E]l espacio dedicado a *área de estacionamiento* es un elemento común voluntario, pudiendo el titular original destinarlo a uno particular. De no destinarse un elemento común voluntario a un particular, se tratará el mismo como elemento común general, no susceptible de indivisión al igual que los restantes elementos comunes, aunque sí susceptible de transformarse en privativo mediante el consentimiento unánime de los titulares. *El Condominio: el Régimen de la Propiedad Horizontal en Puerto Rico*, Puerto Rico, Ed. Dictum, 1992, págs. 84–85.

b. Reiteró que la naturaleza privada o común de un local de estacionamiento depende esencialmente de lo que se estipule en la escritura matriz.

En cuanto a los hechos del caso, concluyó que la decisión de sortear los estacionamientos de visitantes entre los titulares tuvo el efecto de alterar el uso y destino de las áreas de estacionamiento sin la existencia de un acuerdo unánime. Determinó, que la aludida decisión mayoritaria no era un mero acto de administración, ya que logró variar el uso y destino de un elemento común general a uno de uso limitado para los ganadores del sorteo. Razonó, que dicha actuación era nula y que

para variar el uso y destino de los estacionamientos destinados a los visitantes se debía perfeccionar un acuerdo por unanimidad.

Posteriormente, Nuestro mas Alto foro tuvo ante sí los hechos del caso *Nissen Holland v. Genthaller*, 172 DPR 503 (2007). En el referido caso, la Escritura Matriz del Condominio Stella Maris, se limitaba a hacer referencia a que los estacionamientos del Condominio serían de "uso exclusivo," sin adjudicar la titularidad de éstos o destinarlos como elementos comunes. Surge de la relación fáctica del caso, que dos (2) condóminos entraron en disputa por la posesión de una de las plazas del estacionamiento del Condominio. Uno de ellos sostuvo, que había adquirido por prescripción el estacionamiento en controversia, puesto que él y sus antecesores mantuvieron la posesión del mismo por más de treinta y cinco (35) años. El Tribunal de Primera Instancia dispuso sumariamente del asunto y declaró *Con Lugar* la usucapión del estacionamiento objeto de *litigio.*

El caso llegó al Tribunal Supremo. Dicho Tribunal determinó, que a pesar de que no había controversia sobre la posesión ininterrumpida ejercida por el alegado usucapiente, lo cierto era que el caso no podía ventilarse por la vía sumaria por desconocerse la intención de las partes al establecer el destino y uso de los estacionamientos en la Escritura Matriz. Por consiguiente, el Tribunal Supremo devolvió el caso al Tribunal de Primera Instancia para que celebrara juicio y determinara si el derecho de uso de los estacionamientos equivalía a un derecho propietario o a una servidumbre predial discontinua.[5]

Mas tarde, el Tribunal Supremo tuvo ante sí el caso de *Bravman, González v. Consejo Titulares*, supra. En dicho caso, se dilucidó en lo atinente la siguiente controversia: "si la figura de la prescripción

---

[5]Cabe señalar que, tras el caso de *Nissen Holland v. Genthaller,* supra retornar al foro primario, dicho foro emitió su dictamen final. Éste concluyó que el estacionamiento objeto de litigio era privativo del presunto usucapiente y que se habían completado los requisitos atinentes a la prescripción adquisitiva extraordinaria. Añadió, que la escritura matriz de dicho pleito no clasificaba los estacionamientos como elementos comunes generales o limitados, sino que éstos pertenecían a una categoría separada. Este caso fue revisado por el foro apelativo bajo la designación alfanumérica: KLAN201101148. En dicha ocasión un panel hermano determinó confirmar al foro primario declarando así *Con Lugar* la usucapión levantada.

adquisitiva o usucapión tiene cabida en el régimen de propiedad horizontal regulado [por la derogada] Ley Núm. 103-2003 (Ley de Condominios)." *Id*, pág. 834. El Alto Foro concluyó que la Ley de Condominios impide la usucapión de los elementos comunes, sean necesarios o generales, pero permite la de los elementos privativos. En el mismo año, el Alto Foro resolvió el caso de *Batista, Nobbe v. Jta. Directores*, 185 DPR 206 (2012). En dicho caso se dilucidó por primera vez, "si un área limitada al uso exclusivo de un apartamento es un elemento común limitado." *Id,* pág. 210. El Tribunal Supremo concluyó que cuando el área es de uso exclusivo de un apartamento, no es un área común, sino privativa.

En lo pertinente, el cuadro factico del mencionado caso se sintetiza a continuación. El matrimonio Nobbe-Batista eran dueños del único apartamento ubicado en el quinto piso del Condominio Condado Terrace. En el referido piso se localizaba un vestíbulo que daba entrada al apartamento del matrimonio. Este vestíbulo era reconocido en la Escritura Matriz como un elemento común limitado. La controversia en torno al vestíbulo se suscita por la razón de que el matrimonio Nobbe-Batista colocó en el marco del ascensor que da entrada al vestíbulo un portón de rejas con llave que solo ellos podían abrir. El Tribunal Supremo razonó que los elementos comunes limitados tenían que ser áreas compartidas entre mas de un apartamento y no de uso exclusivo de solo uno de éstos. Precisó que, si el área en cuestión era de uso exclusivo de un apartamento, entonces debía ser un área privativa. Cónsono con lo anterior, estableció que "la clasificación de un área como elemento común limitado en la escritura matriz no siempre es correcta," y que el nombre no hace a la cosa. *Batista, Nobbe v. Jta. Directores*, supra, pág. 223.

Ante ello, el Alto Foro concluyó que el vestíbulo objeto de litigio era para el disfrute exclusivo del apartamento del matrimonio, por lo cual no podía ser un área común limitada. El referido Foro culminó la disposición del caso con la siguiente expresión: "No estamos enmendando la

escritura matriz del condominio. Meramente reconocimos que el error en la denominación de un área privativa no autoriza a que se ordene a sus titulares abrirla para el acceso común limitado de los demás condóminos."

Luego en el caso de *Trigo Margarida v. Junta Directores,* 187 DPR 384 (2012), el Tribunal Supremo tuvo la oportunidad de discutir las características de los anejos dentro del régimen de propiedad horizontal. Para dicha discusión, el Alto foro citó al tratadista Vázquez Bote y profirió las siguientes expresiones: "que aunque forme parte del régimen jurídico del apartamento, el anejo no es el apartamento mismo por propia definición." *Id,* pág. 401. Añadió el Tribunal Supremo, que el anejo es un área privativa y accesoria del apartamento. En cuanto a una definición más precisa, esbozó lo siguiente:

> [E]l anejo es un espacio suficientemente delimitado y susceptible de aprovechamiento independiente que está en relación de accesoriedad respecto a un apartamento ordinario y por razón de esa accesoriedad no tiene cuota ni abre folio registral y es de propiedad del apartamento principal; ello, aunque se halle separado del elemento privativo principal. *Trigo Margarida v. Junta Directores,* pág. 403.

A su vez, el Tribunal Supremo hizo referencia a la doctrina española sobre las cualidades de los anejos en el régimen de propiedad horizontal y de ello resultaron las siguientes características atribuibles a los anejos:

> 1) Son espacios delimitados susceptibles de aprovechamiento independiente.
>
> 2) Son accesorios del elemento o departamento privativo a cuyo fin sirven, formando parte integrante no esencial del mismo.
>
> 3) Han de determinarse expresamente en el título constitutivo como tales, pues en caso contrario se considerarán elementos comunes. En el mismo título se señalará el piso o local del que son accesorios, bastando una simple referencia y no siendo necesaria, aunque sí conveniente, su descripción total.
>
> 4) No tienen cuota especial de participación en los elementos comunes por aprovecharles la del elemento privativo base.
>
> 5) Deben tener acceso independiente desde algún elemento común o desde la vía pública.
>
> 6) Se inscriben en el mismo folio y número del departamento privativo base. M. Marcos Jiménez, *Elementos comunes, procomunales y anejos: caracteres diferenciales y disposición de los mismos,* 53 (Núm. 518) Rev. Crít. Der. Inmob. 131, 138 (enero-febrero 1977). *Trigo Margarida v. Junta Directores,* pág. 403-404.

A tenor de lo anterior, es preciso hacer alusión a expresiones adicionales del tratadista Vázquez Bote con relación a los anejos. De su libro *Derecho Privado Puertorriqueño,* Derechos Reales II, Volumen VIII del año 1993, resaltamos las siguientes aseveraciones: **"[L]a posibilidad de existir elementos comunes limitados que dan servicio a unos, pero no a todos los apartamientos, autoriza a limitar ese carácter a un solo apartamiento: este pretendido elemento común limitado a un solo apartamiento no sería otra cosa que un anejo del mismo."** (Énfasis suplido). Véase, la pág. 142 del referido libro.

De otra parte, cabe señalar que la Ley de Condominios vigente define a los anejos como sigue: "Área asignada en la escritura matriz de un condominio **para el uso particular de un apartamento y con exclusión de los demás apartamentos**." (Énfasis suplido). 31 LPRA sec. 1921b.

**D.    Prescripción Adquisitiva Extraordinaria o Usucapión:**

Conforme al Código Civil vigente, "[l]a propiedad es el derecho por virtud del cual una cosa pertenece en particular a una persona con exclusión de cualquier otra. La propiedad concede el derecho de gozar y disponer de las cosas sin mas limitaciones que las establecidas en las leyes." 31 LPRA sec. 7951. En nuestro ordenamiento jurídico, la propiedad puede obtenerse por vía de la prescripción adquisitiva o usucapión. *Adm. Terrenos v. SLG Rivera-Morales,* 187 DPR 15, 26 (2012). "La usucapión es un modo de adquirir el dominio y otros derechos reales de goce mediante la posesión, de la manera y con las condiciones determinadas en la ley." 31 LPRA sec. 8021.

Para concretarse la prescripción adquisitiva la posesión se debe efectuar en concepto dueño, de manera continua, pública y pacífica. 31 LPRA sec. 8022. "Se concibe que un inmueble es poseído como dueño cuando la opinión publica o la percepción general entiende que es el verdadero dueño, unido a los actos que el poseedor realiza con relación a la propiedad, independientemente de la creencia que sobre el particular

este pueda tener." *Adm. Terrenos v. SLG Rivera-Morales,* supra, pág. 29. De manera, que el poseedor que ejecute el estado posesorio mediante actos de violencia o por mera tolerancia del titular del dominio o por autorización, representación y desconocimiento de éste, no podrá adquirir el dominio de la cosa poseída. 31 LPRA sec. 7846; *Adm. Terrenos v. SLG Rivera-Morales,* supra. Además de los requisitos anteriores, los sujetos involucrados – entiéndase el usucapiente y el que pierde el derecho - deben gozar de capacidad **y la cosa a usucapir debe ser susceptible de adquirirse por prescripción.** (Énfasis suplido). *Nissen Holland v. Genthaller*, supra, pág. 512-513.

La prescripción adquisitiva se puede efectuar de dos (2) formas: de manera ordinaria o de manera extraordinaria. 31 LPRA sec. 8027. Para que exista la usucapión ordinaria, el poseedor de la cosa debe obrar de buena fe y tener justo título. *Id.* En cambio, para que se concrete la usucapión extraordinaria basta con que el usucapiente cumpla con el término de adquisición dispuesto por ley. *Id.* El término que se debe cumplir para lograrse la usucapión ordinaria o extraordinaria dependerá del Código Civil vigente al momento del hecho posesorio. Así lo establece el Código Civil actual en su Artículo 1814 que lee como sigue:

> Los términos prescriptivos, de caducidad o de usucapión que estén transcurriendo en el momento en que este Código entre en vigor, tienen la duración dispuesta en la legislación anterior; pero si el término queda interrumpido después de la entrada en vigor de este Código, su duración será la determinada en este. 31 LPRA sec. 11719.

En lo concerniente a este caso, el término a computarse para la alegada usucapión debe ser a tenor de los plazos dispuestos en el derogado Código Civil de 1930, por ser éste la ley vigente al momento de comenzarse la presunta posesión civil. Al hacer referencia a los términos del anterior Código Civil, se desprende que para concretarse la usucapión ordinaria la cosa se debe poseer en un término de diez (10) años - si el dueño de la misma está presente - y veinte (20) años si el dueño de la cosa poseída se encuentra ausente. 31 LPRA sec. 5278. Por su parte,

bajo el referido Código Civil la usucapión extraordinaria debe cumplirse en un término de treinta (30) años. 31 LPRA sec. 5280.

Según nuestra legislación civil general vigente y la jurisprudencia anterior a ésta, la prescripción adquisitiva se puede interrumpir de conformidad a ciertos requisitos normativos y no se interrumpirá al amparo de otros requisitos legales. Siendo así, la posesión para efectos de la usucapión queda interrumpida:

> (a) por su cese durante más de un (1) año;
> (b) por el emplazamiento o citación judicial hecha al poseedor, aunque sea por mandato de un tribunal sin competencia;
> (c) por el requerimiento judicial o notarial, siempre que, dentro de dos (2) meses de practicado, se presente ante el tribunal la demanda sobre posesión o dominio de la cosa cuestionada; o
> (d) por cualquier reconocimiento expreso o tácito del derecho del dueño por parte del poseedor.

De otra parte, la posesión no queda interrumpida en los siguientes escenarios:

> El emplazamiento o la citación judicial no interrumpen la posesión:
>
> (a) si carece de validez por falta de solemnidades legales;
> (b) si el actor desiste de la demanda o no impide que se archive por inactividad, con arreglo al procedimiento civil; o
> (c) si el poseedor demandado prevalece en la demanda.

**E.      Las Costas del Litigio:**

En cuanto a la concesión de costas, la Regla 44.1 (a) de las de Procedimiento Civil, 32 LPRA Ap. V R. 44.1 (a), dispone que las costas son concedidas a la parte a cuyo favor se resuelva el pleito, o se dicte sentencia en apelación o revisión, excepto en aquellos casos en que se disponga lo contrario por ley o por las reglas. Son costas los gastos incurridos necesariamente en la tramitación de un pleito y que el tribunal en su discreción estima que una parte litigante debe reembolsar a otra. La parte victoriosa en el pleito debe presentar memorando de costas en el plazo jurisdiccional de diez (10) días luego del archivo en autos de copia de la notificación de la sentencia o de la devolución del mandato por parte del foro apelativo, según sea el caso. *Comisionado v. Presidenta*, 166 DPR 513, 518 (2005). Regla 44.1 (b) de las de Procedimiento Civil, 32 LPRA Ap. V R. 44.1 (b).

Esta concesión supone una función reparadora bajo la premisa de que el derecho de la parte victoriosa no debe quedar menguado por los gastos que tuvo que incurrir sin su culpa o por culpa del adversario. *J.T.P. Dev. Corp. v. Majestic Realty Corp.,* 130 DPR 456, 460 (1992). El Tribunal goza de amplia discreción para determinar cuáles son los gastos necesarios que el litigante perdidoso debe pagar como costas. *Auto Servi, Inc. v. E.L.A.*, 142 DPR 321, 326 (1997).

**III.**

A continuación, se expondrá una síntesis de los argumentos esbozados por las partes en sus respectivos escritos presentados ante esta Curia.

Los apelantes sostienen que la señora Cortés Rivera adquirió por usucapión el estacionamiento Núm. 9. Sustentan su alegación en la premisa de que ésta ha poseído dicho estacionamiento de manera ininterrumpida, pública, pacífica y en concepto de dueña por espacio de treinta y dos (32) años. A su vez, aducen que, al momento de adquirirse el apartamento (B-11) la persona vendedora le comunicó a la señora Cortés Rivera que el estacionamiento que le correspondía era el Núm. 9. Aunque, de la escritura de compraventa surge que su estacionamiento es el Núm. 8. Además, aseveran que el señor González Cabassa ha obrado de mala fe, puesto que conocía con anterioridad a la compraventa del apartamento (A-11) que la señora Cortés Rivera ocupaba el estacionamiento Núm. 9. Asimismo, arguyen que el referido estacionamiento es un elemento privativo de la señora Cortés Rivera. Ante tales argumentos, reclaman la usucapión del estacionamiento Núm. 9.

Por su parte, los apelados sostienen que la señora Cortés Rivera incumple con los requisitos necesarios para adquirir el estacionamiento en disputa a través de la usucapión. Razonan, que la referida señora no poseía el estacionamiento en concepto de dueña sino por mera tolerancia del dueño anterior. Añaden, que tampoco el resto de los condóminos la

reconocen como titular de dicho estacionamiento. A su vez, aseveran que la posesión del estacionamiento Núm. 9, por la señora Cortés Rivera, fue interrumpida en virtud de la asamblea de titulares celebrada en el año 2012. Por último, alegan que son adquirentes de buena fe, puesto que confiaron en las constancias del Registro de la Propiedad al momento de adquirir el apartamento (A-11), al cual le corresponde el estacionamiento objeto de litigio.

Tras una evaluación puntillosa y comedida del expediente y cuestiones litigiosas ante nuestra consideración, determinamos *confirmar* el dictamen recurrido. A continuación, expondremos las razones que fundamentan nuestra decisión confirmatoria.

Antes de entrar a los méritos del asunto ante nos, se hace necesario auscultar la procedencia de adjudicar sumariamente el caso presente. De un examen de *novo* del expediente, se desprende que no existe controversia sobre la titularidad de los apartamentos de las partes ni sobre el hecho de que la señora Cortés Rivera comenzó a utilizar el estacionamiento Núm. 9 desde el año 1991. Tampoco está en controversia la celebración de una Asamblea de Titulares en el año 2012, mediante la cual se le indicó a la apelante que estaba utilizando el estacionamiento incorrecto. Asimismo, es un hecho incontrovertido que las escrituras de compraventa de los apartamentos pertenecientes a las partes establecen que al apartamento (A-11) le corresponde el estacionamiento Núm. 9 y al apartamento (B-11) le corresponde el estacionamiento Núm. 8. De igual modo, no existe controversia sobre las reclamaciones extrajudiciales que a partir del año 2023 realizó el señor González Cabassa a la señora Cortés Rivera. A esto se le añade que ambas partes litigantes presentaron mociones de sentencia sumaria a través de las cuales solicitaron la disposición sumaria del caso a su favor.

En vista de los anteriores hechos esenciales no controvertidos, procede la adjudicación sumaria del caso de epígrafe. Siendo así, a tenor de la precitada normativa jurídica solo resta aplicar el derecho a los

hechos del caso. Nótese, que el asunto que nos queda por dilucidar es una cuestión de derecho que se circunscribe a examinar la naturaleza de los estacionamientos del Condominio y si estos son susceptibles de adquirirse mediante usucapión.

Conforme expuesto, el régimen de propiedad horizontal se caracteriza por establecer la dualidad del dominio exclusivo de un apartamiento y a su vez el condominio forzoso e inseparable de elementos comunes. Este régimen tiene la particularidad de guiarse por un orden jerárquico de fuentes de derecho que contribuyen en la resolución de las controversias que se puedan suscitar en los inmuebles sometidos a sus estándares. Las referidas fuentes tienen el siguiente orden de prelación: la Ley de Condominios; la escritura matriz y sus anejos; y el reglamento del condominio. La ley aplicable a los hechos de este caso es la Ley Núm. 129-2020, *supra* por disposición expresa de su Artículo 76.

En el escenario particular de los estacionamientos de un condominio, la Ley Núm. 129-2020, *supra* permite que estos se puedan destinar para uso común general, común limitado, como área privativa, o como un anejo. Véase, el Artículo 17 de la Ley Núm. 129-2020, *supra.* Esto, debido a que los estacionamientos son elementos comunes voluntarios o no necesarios y su destino queda a merced de la voluntad de los integrantes del régimen de propiedad horizontal. En el caso ante nos, la escritura matriz establece expresamente que los estacionamientos del Condominio en cuestión son elementos comunes limitados. A esos efectos la escritura matriz lee como sigue:

> The limited common elements, the use of which shall be reserved for the benefit of specific apartments, shall be as follows: (A) <u>Parking Spaces</u> – In the first or ground floor, twenty-four parking spaces, one for the exclusive use of each apartment, series A and B, and two for each penthouse apartment, as shall be permanently designated an assigned in the deed of sale of each apartment. Véase, Entrada #59 de SUMAC del TPI, Anejo #1 – "Escritura Matriz," pág. 30.

Al entrar en la naturaleza jurídica de una escritura matriz, según el expuesto marco doctrinal, ésta crea un estado de derecho que ha de ser

aceptado por los sucesivos titulares al momento en que éstos adquieran apartamentos del régimen horizontal. Esta escritura funciona como una especie de acuerdo privado de trascendencia vinculante para todos los condóminos o titulares y rige las actuaciones de éstos. Cada escritura matriz debe precisar los elementos comunes y especificar su uso y destino. En los casos como el aquí presente, la variación de uso y destino de dichos elementos comunes requerirá el consentimiento unánime de los titulares del inmueble sometido al régimen de propiedad horizontal. Véase, 31 LPRA sec. 1921c.

De otra parte, al hacer referencia a los elementos comunes limitados, el Artículo 3 de la Ley Núm. 129-2020, *supra* define estos como aquellos que se destinan "**al servicio de más de un titular con exclusión de los demás […]**" (Énfasis suplido). 31 LPRA sec. 1921b. En vista de ello, los elementos comunes limitados se crearon para servir a más de un titular. En el presente caso, se exhibe la particularidad de que los estacionamientos fueron destinados en virtud de la escritura matriz a ser elementos comunes limitados, pero cada plaza de estacionamiento sirve al uso exclusivo de un solo titular. Cónsono con la anterior, se desprende de la *"Certificación de Propiedad Inmueble"* de la finca de la señora Cortés Rivera, que a su apartamento "le corresponde el área de estacionamiento Núm. 8." Véase, Entrada #31 de SUMAC del TPI, anejo quinto.

Cabe señalar que, al resolver una cuestión similar en cuanto a la denominación de un elemento común limitado, nuestro más Alto Foro en *Batista, Nobbe v. Jta. Directores,* supra, pág. 223, expresó que **"la clasificación de un área como elemento común limitado en la escritura matriz no siempre es correcta," y que el nombre no hace a la cosa.** (Énfasis suplido). Ante el expuesto marco jurisprudencial y legal en general, se hace necesario atemperar la doctrina vigente a los hechos particulares del presente caso. Considerando a su vez, el orden de las fuentes de derecho aplicables al régimen de propiedad horizontal.

A tenor de lo resuelto en *Batista, Nobbe v. Jta. Directores,* supra y de la definición de elementos comunes limitados establecida en la Ley Núm. 129-2020, *supra,* entendemos que la clasificación común limitada de los estacionamientos del presente Condominio no es la correcta, dado al uso exclusivo y no general que los titulares ejecutan sobre las plazas de estacionamiento del referido Condominio. [6] El uso de estos estacionamientos es acorde al de un anejo.

Según el Artículo 3 de la Ley Núm. 129-2020, *supra,* un anejo es un "[á]rea asignada en la escritura matriz de un condominio para el uso particular de un apartamento y con exclusión de los demás apartamentos." 31 LPRA sec. 1921b. De conformidad a las características esbozadas en el caso *Trigo Margarida v. Junta de Directores,* supra, pág. 403-404, el estacionamiento objeto de litigio cumple con los elementos suficientes para catalogarse como un anejo. Entiéndase, es susceptible de aprovechamiento independiente y tiene relación de accesoriedad con el apartamento al cual le corresponde, acorde a la designación numérica que surge de la escritura de compraventa y que autoriza la escritura matriz. En el presente caso no existe controversia que a tenor de las escrituras de compraventa al apartamento (B-11) le corresponde el estacionamiento Núm. 8 y al apartamento (A-11) le corresponde el estacionamiento Núm. 9. A su vez, el estacionamiento en disputa es de acceso independiente y se identifica en la escritura matriz a través de la expresión general "***one for the exclusive use of each apartment***."

Habiendo establecido lo anterior, corresponde examinar si un anejo dentro del régimen de propiedad horizontal puede ser objeto de usucapión. Según expuesto, una persona puede adquirir el dominio de una cosa por vía de la prescripción adquisitiva. No obstante, existen una serie de requisitos doctrinales que posibilitan el debido perfeccionamiento

---

[6] Por ser pertinente para la naturaleza del estacionamiento en cuestión, cabe reiterar las expresiones previamente citadas del tratadista Vázquez Bote: "[**L**]**a posibilidad de existir elementos comunes limitados que dan servicio a unos, pero no a todos los apartamentos, autoriza a limitar ese carácter a un solo apartamiento: este pretendido elemento común limitado a un solo apartamiento no sería otra cosa que un anejo del mismo.**" (Énfasis suplido). Véase, la pág. 142 del referido libro.

de la adquisición pretendida. El elemento umbral y principal para lograr la adquisición por usucapión, se trata de que el bien a adquirirse sea susceptible de usucapión.

Según esbozado, al referirnos a las características de un anejo, se desprende que éste es susceptible de aprovechamiento independiente, pero al mismo tiempo mantiene una relación de dependencia respecto a un determinado apartamento. Entiéndase, no es una finca independiente ni abre folio registral. Forma parte de un apartamento sin ser el apartamento mismo. Es decir, es un componente o parte integrante del apartamiento al que está sujeto. Siendo así, el estacionamiento en cuestión - como anejo - depende del apartamento al que ha sido asignado en la escritura filial o de compraventa. En concreto, es accesorio al apartamento de los apelados. Permitir la usucapión del estacionamiento Núm. 9 implicaría la apropiación de partes particulares de un apartamento que son indivisibles jurídicamente mediante una relación de accesoriedad. Por lo tanto, no es susceptible de usucapión, puesto que dicho estacionamiento es parte y depende del apartamento al que está anejado mediante indivisión jurídica, según establecida en el Registro de la Propiedad.

Además, la figura de la prescripción adquisitiva se debe analizar cuidadosamente dentro de este régimen horizontal para cumplir con los preceptos legales y salvaguardar la voluntad constitutiva consignada en la escritura matriz. De la presente escritura matriz se desprende que las partes constituyentes del régimen horizontal no pretendían que los estacionamientos fueran propiedad privada de los titulares ni fincas independientes al apartamento al cual sirven. Así pues, de conformidad a las fuentes de derecho que regulan la convivencia de este régimen se debe proteger la voluntad de las partes, según expuesta en la escritura matriz, por ser ésta una especie de contrato privado. En este caso, no vemos que dicho acuerdo sea contrario a la ley, moral u orden público. Por consiguiente, goza de validez.

Nótese, que de conformidad a la Ley Núm. 129-2020, *supra,* aclaramos la denominación correcta del estacionamiento en cuestión, dado al uso exclusivo que los titulares del Condominio ejercen sobre los estacionamientos de dicho Condominio. El referido uso exclusivo está consignado en la escritura matriz y en la *"Certificación de Propiedad Inmueble,"* que forman parte del expediente judicial. Así, es que al amparo de la jurisprudencia previamente discutida y del referido uso de los estacionamientos, hemos concluido que éstos son un anejo y no un elemento común limitado. De igual modo, dado a la naturaleza de los anejos y a la intención de las partes constituyentes del régimen – que descartaron que los estacionamientos fueran propiedad privada – determinamos que el estacionamiento en disputa no es susceptible de usucapión.

En apoyo a la importancia de las fuentes de derecho que regulan este régimen, es necesario señalar que no les corresponde a los tribunales enmendar la voluntad consignada en la escritura matriz. Así, lo estableció nuestro más Alto Foro a tenor de las siguientes expresiones expuestas en el caso de *Batista, Nobbe v. Jta. Directores*, supra: "No estamos enmendando la escritura matriz del condominio. Meramente reconocimos que el error en la denominación de un área privativa no autoriza a que se ordene a sus titulares abrirla para el acceso común limitado de los demás condóminos."

De otra parte, es menester enfatizar que es norma conocida que la revisión apelativa recae sobre la sentencia misma y no contra sus fundamentos. Véase, *Asoc. Pesc. Pta. Figueras v. Pto. del Rey,* 155 DPR 906, 920 (2001). Ante todas las anteriores consideraciones, *confirmamos* la determinación recurrida.

Por otro lado, en su recurso de apelación, los apelantes esbozaron un breve planteamiento en contra de la *"Orden"* notificada por el foro recurrido en fecha de 26 de agosto de 2025. Los apelantes se limitaron a expresar "que se deje sin efecto la Orden del 26 de agosto de 2025 que

concede el memorando de costas sometido por los Demandantes-reconvenidos-apelados." Mas allá de la referida expresión los apelantes no expusieron algún señalamiento de error en contra de esta *"Orden"* ni fundamentaron su petición de revocación. Por lo tanto, no colocaron a este Tribunal en posición de resolver los méritos del planteamiento levantado. Adviértase, que las costas se conceden a favor de la parte que prevalece en el pleito y el tribunal de instancia goza de amplia discreción en su concesión.

En cuanto a la *"Solicitud de Permiso para Replicar y Réplica a Alegato de Apelado,"* presentada por los apelantes, se declara *No Ha Lugar.*

**IV.**

Por los fundamentos que anteceden, *confirmamos* la *Sentencia Parcial* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones